EXHIBIT A

# EMPLOYEE NON-SOLICITATION, NO-HIRE, & NON-COMPETITION AGREEMENT

This Non-Solicitation, No-Hire, & Non-Competition Agreement (this "Agreement") is made and entered into as of 9/20/16 between Spigot Inc. ("Spigot" or the "Company"), whose principal place of business is 774 Mays Blvd # 10-456, Incline Village, NV 89451-9669 and I ("Employee" or "I"). In consideration of Employee's present and future employment by Spigot, the training, contacts and experience that Employee receives in connection with such employment, the compensation and compensation increases paid to Employee by the Company, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Employee agrees as follows:

## 1. PROPRIETARY INFORMATION

1.1 I acknowledge that, because of my responsibilities at the Company, I will help to develop, and will be exposed to, the Company's business strategies, information on customers and clients, and other confidential, proprietary, and trade secret information of the Company and its customers, vendors, suppliers, consultants or business associates, including information defined as "Proprietary Information" in my Employee Proprietary Information Agreement with the Company (collectively, "Proprietary Information"), and that use or disclosure of such Company trade secrets and other Proprietary Information in breach of this Agreement could cause irreparable harm and significant injury to the Company. I also acknowledge that the Company's relationships with its employees, customers, clients, vendors, and other persons are valuable business assets.

## 2. INTERFERENCE WITH BUSINESS

2.1 During my employment with the Company, I will not engage in any business activity that is or may be competitive or in conflict with my employment with the Company or the Company's business, which I understand and agree to be the designing, researching, developing, creating, engineering, programming, licensing, selling and making available products and services for advertising via the Internet or mobile phone networks. This includes, but is not limited to: (a) assisting advertisers in promoting products or services over the Internet; (b) creating content such as games, toolbars, adware programs and/or similar applications; and (c) assisting content providers and aggregators such as web sites, search engines, domain parking companies, toolbar applications, owners of domains, application and or other distribution channels in monetizing the consumer audience by displaying promotions or advertisements through the Internet or mobile phone networks.

During my employment with the Company and for the twelve (12) month period after the date of my employment by the Company ends for any reason, whether with or without cause, and whether acting as a principal, consultant, employee, owner, shareholder, director, officer, partner, advisor, agent, financier, independent contractor or otherwise, I will not, directly or indirectly, for myself or any third party: (i) divert or attempt to divert from the Company any business of the Company; (ii) accept any position or affiliation with a competing business in which I would be required or expected to reveal or otherwise use any Proprietary Information anywhere in the world that Spigot sells or markets its products and services or otherwise does business as of my termination date; (iii) start-up, engage or invest in, own, manage, operate, finance, control, or participate in, lend my name or any similar name to, lend my credit to or render services or advice to, any business whose products, services or activities compete, in whole or in part, with any of the business activities of any business division(s) of the Company with or for which I worked (whether or not in a full-time capacity) during my final twelve (12) months of employment.

2.2 I agree that during my employment by the Company and for twelve

(12) months after the date my employment by the Company ends for any reason, whether with or without cause, and I will not, in any capacity, directly or indirectly, for myself or any third party, solicit or attempt to solicit any advertisers or publishers (by way of example but not by way of limitation, websites or affiliates) of the Company (including those persons or entities who were, at the time of my termination of employment, prospective advertisers or publishers of the Company) with whom I serviced, solicited or attempted to solicit, had contact or of whose identity I learned as a result of my employment with the Company to the fullest extent such restrictions are permissible under applicable law.

2.3 I further agree that during my employment by the Company and at anytime following my employment with the Company I shall not, directly or indirectly, use or attempt to use the Company's trade secrets to divert from the Company any business or business relationship of any kind, including, without limitation, the solicitation or interference with any of its current or prospective customers, vendors, or suppliers, or employees, independent contractors, or other service providers with whom I came into contact or learned of during my employment.

3. <u>REMEDIES</u>

I recognize that nothing in this Agreement is intended to limit any remedy the Company may have under any contract, statute, or other applicable law or legal theory, and that I could face possible criminal and civil actions, if I misappropriate the trade secrets of the Company or its customers, vendors, suppliers, consultants or business associates. In addition, I recognize that my violation of this Agreement could cause the Company irreparable harm and significant injury, the amount of which may be extremely difficult to estimate, thus, making any remedy at law or in damages inadequate. Therefore, I agree that, in the event of a breach or threatened breach that involves Proprietary Information of the Company or its customers, vendors, suppliers, consultants or business associates, the Company shall have the right to enforce the provisions of this Agreement by injunction, specific performance, or other legal or equitable relief. This right shall be in addition to, and without prejudice to, any other remedies available to the Company in law or equity. In any action relating to enforcement or breach of this Agreement, the Company and I agree that the prevailing party in the action shall be entitled to an award of all reasonable attorneys' fees and costs incurred by the prevailing party.

4. <u>SUCCESSORS AND ASSIGNS</u>

I understand and agree that the Company may assign this Agreement or any of its rights or obligations under this Agreement at any time. I further understand and agree that I may not assign, transfer, subcontract, or delegate this Agreement or any of my rights or obligations under this Agreement, and any attempt to do so shall be null and void. Without limiting the foregoing restrictions, this Agreement shall be binding upon me and my heirs, devisees, spouses, executors, administrators, representatives and successors, and shall inure to the benefit of the Company and its successors and assigns.

5. <u>SURVIVAL</u>

I understand that each and all of my obligations contained in this Agreement, including but not limited to the non-solicitation, no-hire and non-competition restrictions set forth in Section 2 hereof, shall survive the termination of my employment with the Company or the termination of this Agreement and remain in full force and effect.

6. <u>SEVERABILITY</u>

If any provision of this Agreement is determined to be invalid, unenforceable or illegal, the validity or enforceability of the other provisions shall not be affected. In addition, if any one or more provisions contained in this Agreement shall be held to be excessively broad as to duration, geographical scope, activity, or subject, it shall be construed by limiting or reducing it, so as to be enforceable with applicable law.

7. GOVERNING LAW; JURISDICTION

I understand that the interpretation, validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to or application of any of Florida conflict of law rules. Any and all claims or actions arising out of or relating to this Agreement shall be brought exclusively in the federal or state courts located in Lee County, Florida; and each of the parties consents and waives all objections to jurisdiction and venue in such courts.

8. WAIVER

No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

9. ENTIRE AGREEMENT

The terms of this Agreement as well as the Employee Proprietary Information Agreement are our final and entire agreement with respect to the subject matter hereof; shall supersede all prior or other current understandings or discussions between the parties; and may not be contradicted by evidence of any prior or contemporaneous agreement. No modification or amendment of this Agreement shall be binding unless executed in writing by me and a duly authorized officer of the Company.

10. INTERPRETATION

When the context requires, the plural shall include the singular and the singular the plural; and any gender shall include any other gender. Section headings are not part of this Agreement and are only for the convenience of the parties. For purposes of this Agreement the word "or" shall include "and/or"; and the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, but rather shall be deemed to be followed by the words "without limitation."

11. MISCELLANEOUS.

Each party represents and warrants that such party has all necessary power and authority to execute and deliver this Agreement and to perform his or her or its obligations hereunder. This Agreement may be executed in counterparts, which together will be the same instrument.

* * * *

I HAVE CAREFULLY READ THIS AGREEMENT AND UNDERSTAND ITS TERMS.

Signature: [signature]

Name: Ryan Horvath

Date Signed: 9/20/16

Spigot, Inc.

By: [signature]

Title: President

Date Signed: 9-20-16